**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| AMANDA REID, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 10-cv-204-JPG-DGW |
| v. | |
| AMERICAN TRAFFIC SOLUTIONS, INC., | |
| Defendant. | Consolidated with |
| MICHAEL C. KUFSKIE, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.10-cv-269-JPG |
| v. | |
| AMERICAN TRAFFIC SOLUTIONS, INC., | |
| Defendant. | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on defendant American Traffic Solutions, Inc.'s ("ATS") motions to dismiss the claims of plaintiffs Amanda Reid (Doc. 25) and Michael C. Kufskie (Case No. 10-cv-269, Doc. 11) pursuant to Federal Rule of Civil Procedure 12(b)(6) and (7). Reid (Doc. 28) and Kufskie (Case No. 10-cv-269, Doc. 19) have responded to the respective motions, and ATS has replied to those responses (Doc. 29; Case No. 10-cv-269, Doc. 23). With respect to Kufskie's claims, ATS has also submitted supplemental authority as allowed by the Court (Case No. 10-cv-269, Doc. 31).

### I.        Rule 12(b)(6) Dismissal Standard

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)).  To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level.  *Bell Atl.*, 550 U.S. at 555;  *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009);  *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl.*, 550 U.S. at 556).

As a preliminary matter, the defendants' motion to dismiss Kufskie's claims refers to matters outside the pleading.  Ordinarily, when such material is presented in connection with a Rule 12(b)(6) motion to dismiss, the Court may not consider the material unless it treats the motion to dismiss as a motion for summary judgment and gives the parties fair warning that it is doing so and an opportunity to respond.  However, there is an exception to this general rule where the attached material is an exhibit to the plaintiff's complaint, *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002), or is a local ordinance of which the Court can take judicial notice, *Minch v. City of Chicago*, 486 F.3d 294, 200 (7th Cir. 2007), *cert. denied*, 552 U.S. 1101 (2008).  Some of ATS's additional matters fall in to these categories, so the Court will consider them.  Other matters submitted by the parties will be disregarded.

## II.    Facts

The complaint in each member case establishes the following relevant facts for the purpose of the pending motions.

A.    Intersection Safety Camera Program

These consolidated cases stem from implementation of the Intersection Safety Camera Program ("ISCP") in two municipalities.  Kufskie's claim involves the program of the City of Florissant, Missouri.  *See* Florissant Municipal Code § 315.160.  Reid's claim involves the program of St. Louis, Missouri.  *See* St. Louis City Rev. Code Ch. 17.07.  The ISCP was designed to enforce regulations requiring vehicles to stop at red traffic lights within the relevant municipalities.

The Florissant ordinance provides that cameras will record vehicles that fail to stop at red lights and, after reviewing a recorded image capturing a violation, a Florissant police officer will complete a violation notice and send it to the owner of the vehicle.  Florissant Municipal Code § 315.160.D.  The owner of the vehicle is presumed to be the driver when the violation occurred, but the vehicle owner may rebut that presumption.  Florissant Municipal Code § 315.160.C.

The Florissant ordinance further provides that when an information or complaint is filed in Municipal Court, the Police Department will issue a summons and serve it on the vehicle owner along with, among other things, a notice that the vehicle owner may submit an affidavit if the vehicle was being operated by someone else at the time of the violation or if the license plate on the offending vehicle was stolen.  The prosecutor may then decide to terminate the proceeding.  Florissant Municipal Code § 315.160.D.

The St. Louis ordinance also creates a rebuttable presumption that a vehicle owner has violated the traffic code if the vehicle was being used in violation of that code.  St. Louis City Rev. Code § 17.07.040.  There too, to contest the violation, the owner may submit an affidavit or swear in Court that someone else was driving the car or the license place on the offending car was stolen.  The prosecutor may then decide to terminate the proceeding.  St. Louis City Rev.

Code § 17.07.050.

Florissant and St. Louis contracted with ATS to actually run the ISCP as set forth in their respective municipal codes.  ATS maintains data related to the ISCP, provides customer service to answer citizen questions and encourages alleged violators to pay the sums demanded of them. ATS does not disclose that it receives a portion of any sums collected.

 B. <u>Kufskie</u>

In early January 2010, Kufskie, a resident of Madison County, Illinois, received a Notice of Violation, issued on December 2, 2009, alleging he failed to stop at a red light on November 24, 2009, in Florissant.  The Notice of Violation appeared to come from the Florissant Police Department, bore the name and badge number of a police officer and the signature of a prosecutor, but it was actually mailed by ATS.  It also stated that there was probable cause to believe Kufskie had failed to stop at a red light in violation of a Florissant traffic ordinance.  The Notice of Violation stated that $100 was due on January 4, 2010, and that the failure to pay the fine by that date would result in a notice to appear in court.  It also informed Kufskie of his ability to submit an affidavit that someone else was driving his car at the time of the violation or that the license plate on the offending vehicle was stolen.

When Kufskie's attorney attempted to enter an appearance in Municipal Court to contest the violation, he learned that no information had been filed against Kufskie, despite issuance of the Notice of Violation.

Some time after receiving the Notice of Violation, Kufskie received a Notice to Appear, issued January 6, 2010, stating that $100 was due by March 11, 2010.  The Notice to Appear also appeared to come from the Florissant Police Department but was actually mailed by ATS.  The Notice to Appear informed Kufskie that if he failed to pay $100 before March 11, 2010, he must

appear in Municipal Court on March 11, 2010, and that if he failed to pay or appear, the matter would be referred to a collection agency and that the failure to pay would "result in additional legal action." No summons was ever issued to Kufskie in accordance with Missouri law and no legal proceedings were ever initiated in Municipal Court.

        C.    <u>Reid</u>

Reid, a resident of Washington County, Illinois, received a Notice of Violation, issued on October 20, 2009, similar to Kufskie's. It alleges she too failed to stop at a red light, but on October 14, 2009 in St. Louis. Reid's Notice of Violation appeared to come from the City of St. Louis, bore the name and badge number of a police officer and the signature of a prosecutor, but it was actually mailed by ATS. It also stated that there was probable cause to believe Reid had failed to stop at a red light in violation of a St. Louis traffic ordinance. The Notice of Violation stated that $100 was due on November 19, 2009, and that the failure to pay the fine by that date or the failure to appear in court on the court date would result in further legal action. It also informed Reid she could submit an exculpatory affidavit similar to the one available in Florissant.

Like Kufskie, Reid attempted to have an attorney enter an appearance for her in St. Louis City Court, but the attorney found that there was no proceeding on file corresponding to the Notice of Violation.

After the Notice of Violation's deadline to pay the fine had passed, Reid received a Final Notice, issued November 23, 2009, stating that she must appear in St. Louis City Court on December 18, 2009, or further legal action might be taken. The Final Notice also appeared to come from the City of St. Louis but was actually mailed by ATS. No summons was ever issued to Reid in accordance with Missouri law and no legal proceedings were ever initiated in St.

Louis City Court.

        D.     The Litigation

       Reid filed her lawsuit on March 17, 2010, and Kufskie file his on April 12, 2010.  The

Court consolidated the cases on October 10, 2010, because they involve the same basic set of

facts – operation of the ISCP – and legal theories.  The operative complaint in each case alleges

causes of action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et*

*seq.*, charging that ATS made false and misleading representations when it:

- claimed that the Notice of Violation and/or the Final Notice was sent by a law enforcement officer, a court or a quasi-governmental body (Count I);

- threatened legal action in the Notice to Appear and/or Final Notice that was not actually contemplated (Count II);

- failed to disclose that the Notice of Violation and/or Final Notice was an attempt to collect a debt (Count III);

- failed to disclose in the Notice of Violation and/or Final Notice that any information obtained would be used for the purpose of collecting a debt (Count IV);

- failed to disclose in the Notice of Violation and/or Final Notice that it was sent by a debt collector (Count V); and

- failed to disclose in the Notice of Violation and/or Final Notice the right to dispute the debt (Count VI).

Kufskie's complaint also alleges state law causes of action for fraud (Count VII), conversion

(Count VIII) and unjust enrichment (Count IX).  Reid's (Count VII) and Kufskie's (Count X)

complaints also assert a cause of action under 42 U.S.C. § 1983 for violation of the plaintiffs'

Fifth Amendment rights against self-incrimination.

       ATS's motions to dismiss argue that it is not subject to the FDCPA because the $100

demanded in the Notice of Violation, Notice to Appear and/or Final Notice was a traffic fine, not

a "debt," and because ATS is not a "debt collector," as those terms are defined in the FDCPA.  It

also argues that there is no allegation it deprived the plaintiffs of their Fifth Amendment rights and that it is entitled to qualified immunity.[1]  The plaintiffs, of course, disagree.

## III.   Analysis

### A.   FDCPA Claims

The FDCPA was enacted for the primary purpose of protecting consumers from "abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process."  *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997) (citing *Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir. 1994), *aff'd*, 514 U.S. 291 (1995));  *see* 15 U.S.C. § 1692(a) & (e).  The FDCPA applies only to "debt collectors" who collect "debts," as those terms are defined by the statute.  ATS contends it does not collect debts and is not a debt collector, as those terms are defined in the FDCPA.

### 1.   Debts

The FDCPA covers only the collection of "debts," which it defines as "any obligation or alleged *obligation of a consumer* to pay money *arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5) (emphasis added).  While this definition does not include every consumer obligation to pay money, "[a]s long as [a] transaction creates an obligation to pay, a debt is created."  *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997) (obligation created by a dishonored check a consumer used to buy groceries

---

[1] ATS also argues the plaintiffs' § 1983 claim must be dismissed because it is not feasible to join necessary parties to this litigation.  *See* Fed. R. Civ. P. 12(b)(7) & 19.  The Court need not address this argument in light of the its resolution of ATS's arguments for dismissal under Rule 12(b)(6).

was a consumer debt).

The FDCPA does not define "transaction," so the Court gives the term its ordinary meaning:  a business deal or agreement of a variety of different types.  *Id.* (citing *Webster's New World Dictionary* 1509 (2d ed. 1986)).  Implicit in the understanding of a transaction for FDCPA purposes is that the business deal or agreement is consensual and that the parties have negotiated or contracted for consumer goods or services.  *Id.* at 1326.  Transactions under the FDCPA do not include non-consensual obligations such as those resulting from shoplifting, *Shorts v. Palmer*, 155 F.R.D. 172, 175-76 (S.D. Ohio 1994), child support orders, *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994), parking tickets,  *Graham v. ACS State & Local Solutions, Inc.*, No. 06-2708 (JNE/JJG), 2006 WL 2911780, * 2 (D. Minn. Oct. 10. 2006), or automobile impoundment and storage fees, *Betts v. Equifax Credit Information Servs., Inc.*, 245 F. Supp. 2d 1130, 1133-34 (W.D. Wash. 2003).  *Compare Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1203 (W.D. Wash. 2003) (debt created when consumer fails to pay parking fee resulting from implied contract to park in unmanned private lot for personal purposes).  Just a short while ago a District Court in Missouri held that traffic fines imposed as a result of red light cameras like those at issue in this case are not "debts" because the vehicle owners were not acting as consumers and the traffic fine was not consensual.  *Mills v. City of Springfield, Mo.*, No. 2:10-CV-04036-NKL, 2010 WL 3526208, 15-16 (W.D. Mo. Sept. 3, 2010).

ATS contends that the fines imposed as a result of the alleged red-light traffic violations are not debts because they do not arise out of any consensual transaction for consumer goods or services.  The plaintiffs counter that the traffic fines are debts as that term was interpreted under an earlier version of the Illinois Collection Agency Act ("CAA"), Ill. Rev. Stat. 1985, ch. 111 ¶ 2001 *et seq.* (1991) (now codified as amended at 225 ILCS § 425/1 *et seq.* (2010)).  *See People*

*ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 56-60 (Ill. 1991).  In their complaints, they also seem to suggest that the operation of their vehicles recorded on the ISCP cameras resulted from a consensual consumer transaction between them and the State of Missouri for the accomplishment of personal, family or household services.

As a preliminary matter, caselaw interpreting "debt" as used in the CAA in 1991 is irrelevant to the interpretation of "debt" in the FDCPA.  In 1991, the CAA did not define "debt," and, as discussed above, the FDCPA does in a very specific manner.  Furthermore, the CAA and FDCPA were enacted by entirely different legislative bodies with different concerns and purposes.  Cases interpreting the 1991 CAA simply cannot be relied upon to interpret the FDCPA in this context.

The plaintiffs have not pled any facts plausibly suggesting that the fines at issue in this case can reasonably be viewed as the product of consensual consumer transactions.  They are not the product of a negotiation or contract, explicit or implied, where the plaintiffs purchased the right to run red lights in order to accomplish personal or family purposes.  On the contrary, the fines are penalties for violating traffic ordinances that were enacted by municipal legislative bodies.  Like parking tickets in *Graham* and traffic fines in *Mills*, they are not debts under the FDCPA.

        2.    <u>Debt Collector</u>

The FDCPA applies only to "debt collectors," which it defines as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any *debts*, or who regularly collects or attempts to collect, directly or indirectly, *debts* owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6) (emphasis added).  Because the plaintiffs have not alleged facts plausibly suggesting that ATS is in the business of collecting "debts" as that term is defined under the

FDCPA, it has also failed to allege facts plausibly suggesting ATS is a debt collector.

For the foregoing reasons, the Court must dismiss Counts I through VI of Kufskie and Reid pursuant to Rule 12(b)(6) for failure to state a claim.

B.      § 1983 Claim

In order to state a § 1983 claim against an individual, a plaintiff must allege that the defendant deprived the plaintiff of rights secured by the Constitution or laws of the United States and that the defendant was acting under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006); *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).  The plaintiffs claim ATS deprived them of their rights under the Fifth Amendment to the Constitution, applicable to state entities through the Fourteenth Amendment, *see United States v. Cozzi*, 613 F.3d 725, 728 (7th Cir. 2010), not to be compelled to give evidence against themselves by forcing them to give a statement to exonerate themselves.  No party seriously disputes that ATS was acting under color of state law in working with the municipalities at issue in this case.  This case will turn, therefore, on whether the plaintiffs have alleged a deprivation of their Fifth Amendment right against self-incrimination.

The Fifth Amendment provides, in pertinent part, "No person . . . shall be compelled in any criminal case to be a witness against himself. . . ."  U.S. Const. amend. V.  The privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) (footnotes omitted).  However, where there is no reasonable, real and appreciable ground to believe a compelled statement or information derived from it can be used in a criminal

proceeding against the testifier, the Fifth Amendment provides no protection.  *See Brown v. Walker,* 161 U.S. 591, 597, 599 (1896) (privilege not available if testifier pardoned of crime; stating "[I]f the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness, the [right against self-incrimination] ceases to apply.").  Some courts have held that Fifth Amendment rights apply to statements that can be used in aid of traffic prosecutions, *see Bootz v. Childs*, 627 F. Supp. 94, 100-01 (N.D. Ill. 1985), and the Court assumes without deciding that it would apply in the alleged traffic violations at issue in this case.

The plaintiffs have not adequately pled a Fifth Amendment violation because they have not alleged facts suggesting the affidavit is compelled or that it is self-incriminating.  Kufskie's complaint and the attachments thereto show that submitting an affidavit is an option for a vehicle owner to possibly avoid further prosecution of a case:

> The supplemental violation notice shall contain, at a minimum, the following information. . . .
>
> (b) A statement that, if at the time of the violation, the motor vehicle was being operated by a person other than the owner of the vehicle or the license plate captured by the recorded image was stolen, the owner *may* submit information to that effect by affidavit, on a form provided by the City, or under oath at the Municipal Court proceeding. . . .

Florissant Municipal Code § 315.160(D)(4) (emphasis added).  The St. Louis ordinance is substantially similar.  *See* St. Louis City Rev. Code § 17.07.050(B)(2).  Furthermore, Kufskie's Notice of Violation provides:

> If, at the time and place of the violation, the motor vehicle was being operated by a person other than the Owner of the vehicle or the license plate captured by the Recorded Image was stolen, the Owner may submit information to that effect by affidavit, on a form provided by the Florissant Municipal Court.

Kufskie Notice of Violation, Instructions.  Again, Reid's Notice of Violation and Final Notice contain substantially similar provisions.  *See* Reid Notice of Violation, Instructions; Reid Final

Notice, Instructions.

Clearly, the vehicle owner is not being compelled to testify against himself or to waive any right to remain silent.  Neither the ordinance nor the Notice of Violation requires a vehicle owner to submit an affidavit.  If an affidavit is not submitted prior to the deadline on the face of the notices, or if it is but the prosecutor declines to dismiss the case, the matter will simply proceed to a hearing where the recorded image will be submitted as evidence against the owner, the vehicle owner will be given an opportunity to present a defense which may or may not include his own testimony, and the court will determine whether a violation has been committed. Indeed, a vehicle owner is free to complete the entire violation adjudication process without ever having to testify at all.  This situation occurs every day in criminal court, with one important distinguishing factor:  in criminal proceedings, the defendant is presumed innocent, whereas in the traffic proceedings at issue in this case, the vehicle owner is not if his vehicle is captured on camera.  The plaintiffs' gripe with this presumption is really a due process gripe, which they have not articulated in this case.

More importantly, nothing in the plaintiffs' complaints plausibly suggests the affidavits could reasonably be used to incriminate them.  The statements allowed by the municipal ordinances to overcome a presumption of liability for a fine are not incriminating but exculpatory.  Indeed, each plaintiff admits that 'if he[/she] were to truthfully fill out the proposed affidavit of non-responsibility, that it would prove him[/her] innocent of the charges against him[/her]."  Kufskie Resp. Mot. Summ. J. at 7 (Case No. 10-cv-269-JPG-DGW, Doc. 19);  Reid Resp. Mot. Summ. J. at 8.  In the absence of a real and appreciable danger the plaintiffs' affidavits could be used against them, the Fifth Amendment right against self-incrimination simply has no application.

12

In sum, nothing alleged in the plaintiffs' pleadings amounts to a violation of the Fifth Amendment right against self-incrimination.  Therefore, dismissal for failure to state a claim is warranted.

C.       Kufskie's Other Claims

ATS asks the Court to use its discretion to decline to exercise jurisdiction over the remaining state law claims by Kufskie.  *See* 28 U.S.C. § 1367(c).  The plaintiffs, on the other hand, contend that the Court must retain this case because it has jurisdiction over the remaining claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

As a preliminary matter, Kufskie did not invoke the Court's jurisdiction under CAFA in his complaint.  He relies solely on the Court's federal question jurisdiction under 28 U.S.C. § 1331 for their FDCPA and § 1983 claims and on supplemental jurisdiction under 28 U.S.C. § 1367(a) for his state law claims.  He does not assert CAFA as a basis for jurisdiction and does not include allegations to support CAFA jurisdiction.  Nor does he point to any facts suggesting CAFA jurisdiction in response to the motion to dismiss.  There is simply no basis for the Court to retain jurisdiction over the plaintiffs' state law claims under CAFA.

Contrary to the parties' beliefs, the Court continues to have jurisdiction over the remaining claims under 28 U.S.C. § 1367(a), which extends supplemental federal jurisdiction to all claims that are sufficiently related to the claims on which original jurisdiction is based so as to be part of the same case or controversy.  However, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  In deciding whether to decline jurisdiction over state law claims when no original jurisdiction claims remain pending, a district court should consider judicial economy, convenience, fairness and comity.  *Wright v. Associated Ins. Cos.*, 29

F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[W]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright*, 29 F.3d at 1251).

The Court has considered the relevant factors and has determined that dismissal of Kufskie's state law claims without prejudice is proper; he may refile his claims in state court. This case is in its early stages and substantial resources have not yet been expended in federal court. Additionally, state courts are generally more familiar with the application of state law causes of action such as those at issue in this case. Kufskie has pointed to no countervailing considerations mitigating in favor of exercising jurisdiction over the remaining claims in this case. Accordingly, the Court will decline to exercise jurisdiction over Kufskie's claims in Counts VII through IX.

**IV.    Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the motions to dismiss filed by ATS (Doc. 25; Case No. 10-cv-269, Doc. 11);

- **DISMISSES** Counts I through VI of each case, Kufskie's Count X and Reid's Count VII **with prejudice**;

- **DISMISSES** Kufskie's Counts VII through IX **without prejudice**; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: December 20, 2010**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

14